LYNCH SHRANK, Respondent, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, June 28, 1911.

1. MASTER AND SERVANT: Railroads: Negligence: Contributory Negligence. Plaintiff, a section hand, with other section hands, under the direction of their forman, all in defendant's employ, were running a handcar after dark ahead of a passenger train reported to be late. The foreman made one or more stops to look for the train. Suddenly the train approached around a curve, and plaintiff, to save himself, jumped and was injured. Plaintiff had been facing the direction from which the train approached, and if he had been looking he could have seen the reflection of the headlight on the train before it was discovered by the foreman. Under the evidence it was for the jury to determine whether defendant's foreman was negligent in failing to properly guard against and watch out for the approach of the train, and whether plaintiff was negligent in not sooner discovering its approach.

2. ————: ————: ————. A person of ordinary prudence has no right to risk those in his care to mere chance where he has at hand the means to overcome probable danger.

3. ————: ———— ————. Where the issue of plaintiff's contributory negligence is such that there might be two different views in the minds of fair minded men, the question is for the jury.

4. TRIAL PRACTICE: Instructions: Presumption of Due Care. An instruction is not erroneous which tells the jury that the burden is on the defendant to establish plaintiff's contributory negligence, and that it is for them to determine whether the evidence is sufficient to overcome the presumption of due care which arises in plaintiff's favor founded on instincts of self-preservation.

5. ————: ————: Sufficiency of Evidence. An instruction which tells the jury to find that the defendant's foreman was negligent if he failed to take any reasonable precautionary measures to guard the safety of the men on the handcar, is not erroneous as ignoring precautionary measures taken by the foreman and as not being supported by any evidence that there were other precautionary measures which he might have taken. It was for the jury to say whether the measures taken were reasonably precautionary; and it required no evidence to show that the foreman could have warned the operators of the train by flags, or torpedoes, or other signals.

6. REMOVAL OF CAUSES: Amount in Controversy: Jurisdiction. Plaintiff sued in two counts, each for $1999. The first count alleged an expenditure of $100 for medical care; the second count omitted this item. These allegations did not make the total amount sued for in either count exceed $1999, and therefore the action was not removable.

7. COURTS: Jurisdiction: Federal Question. Appellant's contention that the amount involved in this case made the case removable is without merit, and it is not the duty of this court to certify such a case to the supreme court.

Appeal from the Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*Scarritt, Scarritt & Jones* for appellant.

*W. F. Riggs* for respondent.

BROADDUS, P. J.—This is a suit for damages on account of injuries sustained by plaintiff while in the employ of defendant as a railroad section hand. The statements filed by the parties to the suit do not agree in many important particulars for which there can be assigned no reason, as all the evidence was included in a proper bill of exceptions.

The record shows that plaintiff was injured on the 24th of December, 1907, by jumping from a moving handcar on which he was riding with the foreman and other men of the gang on the defendant's railroad. The gang was composed of five men, including the foreman, whose name was Braxdale. The section on which they worked extended from Blue Springs to Selsa, a distance of four and one-half miles. The foreman was ordered to go to Selsa to meet the east-bound local freight and to load on to it some railroad material. The men came to work some minutes earlier than the usual time of about 6:45 o'clock in order to meet said local freight train at Selsa at 7:50 a. m. The section men got out the handcar and put it on the track and moved it to the depot where they were joined by the foreman. The foreman had ascertained that the next passenger train bound west was over one hour late. The men and foreman then got onto the handcar and started west toward Selsa, all of them working the levers that moved the car. All the men faced in the direction in which the handcar was going except the plaintiff, who was riding with his face backward. Appellant's statement is that he was so placed for the purpose of watching for a train approaching from the rear. This statement is not borne out by plaintiff's witnesses, but as a matter of fact was contradicted. On the contrary no such order was given to him and he was working the lever with the others. It will be assumed, however, that he was in a more favorable position to see a car approaching from the rear than were his

companions. After proceeding west for several miles the passenger train that was late suddenly appeared around a curve in the railroad. The men, in order to save themselves, jumped from the handcar. The plaintiff without turning around to face the direction in which the car was going jumped and fell on the ground which was frozen and received a severe injury on his head.

After starting, the car was stopped at one point at least to ascertain if a train was approaching, where the foreman got off and went to one side of the track to make observations. Not seeing any approaching train he proceeded on toward Selsa. When the car had gone about two hundred yards from the place of stoppage, the section foreman looked back and saw the headlight of the passenger train coming around the said curve. The plaintiff testified that he did not see the headlight until after the whistle was sounded, although it was shown that it could have been seen by him before that had he been looking. He testified, however, that he knew enough for his own safety to look for such train. Had he been looking he could have seen the reflection of the headlight before the train itself came into view, a distance of about 750 feet from the place where the men jumped from the handcar.

The plaintiff's action is in two counts. The first charges that the section foreman was negligent in failing to take proper precaution to ascertain the approach of a train, and in taking the gang out from Blue Springs with the knowledge that the train was approaching. The second count was based on the allegation of the negligence of the men operating the passenger train. This count was dismissed before the cause was submitted to the jury.

Admitting that the foreman was not negligent in starting out with his men on the handcar when he knew there was a delayed train that might overtake

Shrank v. Railroad.

them before they reached the next station where they were to stop, we think it was a question for the jury to say whether he exercised due care in keeping a vigilant watch for the coming of said train. He was acquainted with the cuts and curves of the road, yet, notwithstanding such knowledge, he failed to discover the coming train because it was obscured from view by a curve in the track until it was within the distance of 750 feet. It is true he got out but a few minutes before to look for it, but not seeing it, he continued to go on. Had there been no curve in the track at the point he could have seen it. Under the circumstances he should have done more. He should have taken such other precautions as would have enabled him to have seen that which the curve in the track prevented him from seeing. This could have been done easily. He was trusting to chance. A person of ordinary prudence will not trust those committed to his care "to mere chance, where the means are available by the employment of which he may overcome probable danger." [Mack v. Ry. Co., 123 Mo. App. l. c. 539.] He could have easily signaled the coming train by means of flags or torpedoes on the track that there was a handcar ahead, but he did not use such precautions. It was for the jury to say whether he exercised that caution which was required by the circumstances.

The plaintiff, it is urged, was guilty of such contributory negligence as precluded his right to recover. This is the most serious question presented by the record. He was stationed with his face to the rear, so that he would naturally be the first person on the car to see the delayed train when it came in sight, yet, he was not looking and did not see it until he heard it sound the whistle. Ordinary prudence would have required him to look out for his own safety as he knew of the danger. But in view of the fact that the foreman had just got out and looked

for such train and had found it safe to proceed, we do not believe we would be justified in saying as a question of law his own negligence was a bar to his recovery. The tendency of the evidence is to show that he was relying on the superior knowledge and foresight of the foreman. Under the circumstances it was a question of fact for the jury and not a question of law for the court. It is a matter about which there might be "two different views in the minds of fair minded men, the one condemning him and the other exonerating him." In such case he was entitled to go to the jury. [Mockowik v. Railroad, 196 Mo. 550.]

Instruction 3 given for plaintiff was that: "The court instructs the jury that contributory negligence is a matter of defense, to be alleged in the answer and proved to exist by a preponderance of the evidence, and where there is sufficient evidence to overcome the presumption of due care which arises in plaintiff's favor founded on instincts of self-preservation, is a question for the jury." The objection to this instruction is that as there was some evidence tending to show that plaintiff was guilty of contributory negligence it was improper to instruct the jury that the law presumed that he exercised due care. Had the instruction been so framed the objection would be good, but such is not the case. It merely told them that the burden was on defendant to allege and prove that such presumption did not obtain.

The objection to instruction two that it is a mere abstract proposition of law is not well taken, but is a direct application of the law to the facts in issue. Instruction one is criticised because it told the jury, that they might find a verdict against defendant if they believed that the section foreman "ordered his men to place said handcar on the track and run it from Blue Springs to Selsa ahead of the passenger train without taking any reasonable precautionary

measures to guard the safety of the men on the hand-car.'' The objection is that it was in the teeth of the evidence to permit the jury to find that the foreman "did not take *any* precautionary measures, and there is an entire lack of evidence as to what other precautionary measures the section foreman might have taken in addition to those that he did take.'' The language of the instruction is not quoted correctly in appellant's argument, the language used is not "any precautionary measures'' but instead, "reasonable precautionary measures.'' It was for the jury to say whether the measures taken were reasonably precautionary. The result showed that they were not. The fact that the foreman stopped at times to see if the train was approaching, we do not think owing to the curves in the track and the cuts in the road was reasonably precautionary to guard against a fast train approaching from the rear. And it did not require evidence to show what every one knows, that flags or torpedoes or other certain signals should have been given to warn the operators of the passenger train that there was a handcar on the track ahead. It was a duty which the foreman owed not only to the men in his charge, but also to the safety of the employees and passengers on said train. The criticism is wholly without merit.

One other question is raised by appellant which perhaps requires notice. It is insisted that the trial court committed error in not certifying the case to the United States Circuit Court for the reason that there was more than two thousand dollars in controversy, which gave said court jurisdiction, the plaintiff being a resident of the State of Missouri and defendant a resident of the State of Illinois.

The cause of action is stated in two different counts. Because the first alleges as an item going to make up the sum of his damages that he paid out

159 App.—20

Shrank v. Railroad.

one hundred dollars for medical care and the second omits this special charge the first perforce is a claim for more than $1999, although the claim in each is for that amount and judgment prayed for such amount only. And it is insisted that thereby a federal question was involved which under the constitution required that the case be certified to the Supreme Court. If any such question was involved our duty in the premises would be clear and the cause should be certified. But it is clear that no such question can arise in this case. It would require a higher degree of mental penetration than is usually accredited to a "Philadelphia lawyer" to discover that more than $1999 is involved in this litigation and that perforce the cause should be certified to the Supreme Court to settle the question. We quote from appellant's argument: "Whether or not the point is well taken can make no difference as to the jurisdiction of this court; for if it is even a debatable question, of which there can be no doubt, the sole authority to pass upon the question is in the Supreme Court."

It seems appellant is not fully persuaded that there is any merit in the claim as to jurisdiction, and inferentially we might say it has not much faith in the question but believes it is debatable. But we do not think it is debatable to any extent, but on its face is utterly absurd and deserves no further notice.

Other questions we deem unimportant or not necessary for comment. Finding no error the cause is affirmed. All concur.